Dunham v. Pettee.

THOMAS DUNHAM *and* FREDERICK DIMOND *v.* DANIEL PETTEE *and* MOSES MANN.

A tender by the vendor, of an unindorsed custom house permit, authorizing a delivery of the goods by the warehouse man, it appearing that the permit was sufficient if indorsed by the vendor, to enable the vendee to take possession,—*Held*, a sufficient offer of delivery of the goods. The want of the indorsement was immaterial, as the indorsement could have been made immediately had the vendee made objection on that ground.

[Following dictum in *Dunham* v. *Pettee*, 8 N. Y. 508.]

Where it appears from the course of dealing of the warehouse man, or by the agreement of the parties, that the goods stored will be delivered without requiring immediate payment of the storage, the warehouse man relying upon the personal credit of the party, there is no lien; because such a course of dealing is inconsistent with an implied agreement at the time of the deposit, that the property is not to be taken away unless the storage is paid.

Where it was the established usage of the storehouse keeper to deliver property to houses in good standing, relying upon their personal credit for the payment of the storage, the right of lien was waived, and the Court would have no right to imply, nor would a jury be justified in finding, that the contract of the plaintiff with the storekeeper was different from that of other houses in good standing; but it must be presumed that the plaintiffs contracted upon the same terms as others in like situations until the contrary is shown.

There being no lien upon the property for storage, and the vendee on the permit already tendered, having the right to the possession of the property, it would be unreasonable to require that, at the time of the delivery, the vendor should pay the storage.

THIS was an application for a new trial on an appeal from a judgment entered on a third trial of this cause. The case was first tried before Judge WOODRUFF, on the 9th and 11th March, 1850, and resulted in a verdict for plaintiffs. The judgment on this verdict was affirmed at General Term on appeal, Judge WOODRUFF delivering the opinion of the Court. This judgment was reversed in the Court of Appeals, in June, 1853. See 4 Selden, 508.

Dunham v. Pettee.

A new trial was had before Judge DALY, and a verdict again rendered for plaintiffs, the judgment on which was reversed at the General Term of this Court, in December, 1855—opinions being delivered by Judges INGRAHAM and WOODRUFF. See 4 E. D. Smith, 500.

The case was last tried before Judge HILTON, and a verdict rendered for plaintiffs. Application was made for a new trial, which was denied, and defendants appealed to the General Term.

The action was brought upon the following contract made between the plaintiffs and the defendants.

Sold to Messrs. Pettee & Mann, for account of Messrs. Dunham and Dimon, 155 tons (or thereabouts) of English bar iron, as per specification of the same, now in public store in this city, at fifty dollars per ton, as per custom house weigher's return, equal to six months' credit; but payment for said iron is to be made as follows, to wit: $750 to be paid now, and the balance is to be paid within sixty days from this date, and discount is to be made on the bill at the rate of seven per cent. per annum, reckoning the time from the date of the average payment of the bill until the end of the six months above named. The sellers are to hold a policy of insurance on the iron until the whole amount is paid; and the buyers are to pay the insurance and all storage expenses from and after this date. It is understood that the iron is to be paid for on delivery, (within the sixty days aforesaid) and should the full amount not be paid within the sixty days aforesaid, Messrs. Dunham and Dimon will be at liberty to sell the iron to other parties for account of Messrs. Pettee and Mann.

New York, 12th March, 1849.

NATHAN CASWELL, Broker.

The plaintiffs, after setting forth the foregoing contract in their complaint, allege that the defendants paid the sum of $750 on said contract, which sum the plaintiffs accepted and received in part performance thereof; that they were ready and willing to deliver said goods and receive the balance of the consideration therefor, according to the terms of the said contract, and in all respect to comply with their part of said contract, and that they did offer and tender to the said plain-

Dunham v. Pettee.

tiffs the said iron mentioned in said contract, within the time aforesaid, to wit, the sixty days mentioned in said contract; that the defendants were not ready and willing to receive the same and pay the balance of the consideration money therefor, but wholly refused so to receive the same, to the damage of said plaintiffs, &c.

The answer admitted the execution of the contract, and the payment of $750 on account thereof, and alleged that the defendants were ready and willing to receive said goods, and pay for them according to the terms of the contract, and demanded of the said plaintiffs that they should deliver to them the said goods, but the said plaintiffs were not ready and able, and refused to deliver the same.

It appeared in evidence that the iron in question, consisting of about one hundred and fifty tons, was in a private bonded warehouse, in New York; that the storekeeper, in order to deliver the iron, would legally require a permit from the custom house authorities. There was, at the date of the contract, storage due for the iron, which constituted a lien. But the storehouse keeper testified that it had been his custom to deliver goods of parties he knew, without requiring the storage dues to be first paid; that he had had dealings with the plaintiffs, and was in the habit of delivering their goods in store, without first insisting on the storage dues, and that if the plaintiffs had sent an order for the delivery of the iron in suit, to the defendants, he would have done so. He did, subsequently, deliver the iron to other parties on the order of the plaintiffs.

The plaintiffs made a formal tender of the iron to the defendants' clerk, offering the custom house permit, and rendered a bill for the iron, wherein charges for the storage since the date of the contract were included. The clerk refused to accept the tender of the permit, but raised no objection on the ground of the existence of any lien for previous storage. It did not appear that either the defendants or their clerk had knowledge of such lien.

The Court (HILTON, J.), having refused to charge as requested by the defendants' counsel, charged the jury as follows:

"The action is brought to recover the difference between

Dunham v. Pettee.

the price agreed to be paid by defendants and the value of the iron on the day they were bound to complete the purchase. The case may be said to turn mainly on a question of law, as to the effect of the tender of the iron with the lien existing upon it for storage ; and in respect to which the storekeeper, Briggs, testifies that from his previous dealings with the plaintiffs, if they had requested him to deliver the iron without previous payment of the storage, he certainly would have complied, and that he was in the habit of thus dealing with them and others. * * * * * The defendants, it appears, were dealers in iron, and would naturally be aware of the manner in which iron is kept, and at the time this tender was made, it should be presumed that they had knowledge of the fact that a charge for storage would exist or be incurred in respect to this iron, and when the plaintiffs made the tender unaccompanied by any receipt for storage, if the defendants wanted to avail themselves of this objection now raised, they should have called the plaintiff's attention to the omission, and refused to accept until the storage charges were paid, and the receipt produced ; not having done so, the objection must be considered waived.

The evidence shows that at the time of this tender there was offered to the defendants, the custom house permit, authorizing the delivery of the iron to the plaintiffs, but not endorsed by them.

The Court of Appeals say that the want of this endorsement was not material, because the permit was not objected to on that ground, and adding that if it had been, the endorsement could have been immediately made.

For the same reason the defendant should not now be permitted to object, that the charges for storage had not then been paid, because this objection was not stated at the time of the tender. If it had been, the plaintiffs could have at once paid them, and thus obviated any difficulty on that ground.

In cases where property is tendered to a party who knows, or should be presumed to know, of the existence of a lien or charge upon it, of this nature, which could be easily and readily removed, and at the time of tender, certain objections to accepting it are specified, the law will presume that the party intended to waive all other objections.

The tender here shown was at the right time, and in the

Dunham v. Pettee.

right place, and if made in the proper manner, was sufficient to put defendants in default.

In conclusion, if you shall find that at the time of this tender, the plaintiffs were in a condition to deliver the iron, that they actually offered to deliver it in performance of their contract, and that there was then no lien or charge for storage, which, if attention had been called to it, by objection, they could not have easily removed, they are entitled to your verdict."

The jury rendered a verdict for the plaintiffs. The defendants moved for a new trial at Special Term, which was denied; and they appealed to the General Term.

*Joseph T. Mills and William Curtis Noyes*, for appellants.

*Charles H. Hunt and John Van Buren*, for respondents.

By the COURT.—DALY, F. J.—The point decided by the Court of Appeals in this case, 4 Seld. 508, was, that the question should have been submitted to the jury whether the plaintiffs were ready, and offered to deliver the iron to the defendants, and the Chief Justice who pronounced the opinion of the Court declared that if that question had been properly left to them, the jury might well have found in the plaintiff's favor. He also remarked that the want of an endorsement of the custom house permit was not objected to by the defendants, that if it had been, the endorsement could have been immediately made or obtained; that the bargain was, in fact, broken by the defendants, not because the permit was unendorsed, but because the defendants wanted the permit delivered to them that they might thereby get the notes of D. M. Wilson & Co., to whom they had sold the iron, and obtain by means of their notes the money wherewith to pay the plaintiffs. He also declared that it was not necessary to bring the iron to the plaintiff's office and tender it there, but that an offer to deliver in good faith was a substantial compliance with the contract. It is true that all this was *obiter* on the part of the Chief Justice, the point determined by the Court being the one above stated, but I refer to it because it was, in my judgment, a correct statement of the law, and will be applied without farther reference to it, in the decision of the present case, so far as it is necessary.

When the case came again before the Court for review (4 E. D. Smith, 500) it was held by my brethren INGRAHAM and WOODRUFF, that if there was a valid lien upon the goods for storage, the offer to deliver should have been an offer disencumbered of any lien; that the fact that the clerk of the defendants made no objection on that account was immaterial, as he could not waive the defendants' right, and that to warrant a waiver on the part of the defendants, it must appear that they knew that the storage remained unpaid. It was remarked, however, by my brother WOODRUFF, that there could be " no doubt of the power of the storekeeper to waive the lien, * * * and that any arrangement between him and the plaintiff, amounting to an actual giving of credit to them personally, excluding him from a lien upon the iron, or possibly a previous course of dealing upon personal credit, coupled with actual agreement that was made in this instance respecting the price," (the rate or charge for storage) " might have warranted the jury in finding that the defendants would, by accepting the plaintiffs' tender, have acquired the actual and legal control of the iron," and " that if the defendants were aware that the storekeeper was, in a course of dealing with the plaintiffs, looking to their personal credit, and not claiming any lien, or even if *that were the customary usage*, the omission of the defendants to make the objection, might amount to an acquiescence in the sufficiency of the tender without requiring the plaintiffs to go to the storekeeper at once and make the payment of storage."

The testimony upon the present trial was more full and satisfactory upon all these points than upon the former trials, and was, in my opinion, abundantly sufficient to entitle the plaintiffs to recover.

The plaintiffs' clerk testified that there was no occasion for an endorsement of the permit, but that he would have en-( :sed it if the defendant had asked him to do so, which effectually disposes of this objection.

The storekeeper testified that the custom of the storehouse was to charge the storage to good houses like that of the plaintiffs, instead of demanding payment, except in the case of quibbling customers, who, though perfectly good, were required to pay the storage before the property stored was

delivered, that the plaintiffs' standing during the period was good, and that there was not *one in fifty cases* where they insisted upon the payment of storage before delivering the goods; that when an order was presented, they charged the former owner for storage up to that date, and passed the new charges to new account. The witness could not recollect any instance in which the plaintiffs had asked him to deliver upon credit. He could not recollect if, in his previous dealings with the plaintiffs, it was his habit to deliver goods on their order without the payment of storage, but that if they had asked him he would certainly have done so, as he was in the habit of doing so with others; that if the order or permit had been presented to him he would have *certainly* delivered the goods. This was not a public, but a private bonded warehouse, in which the compensation for storage went to the witness and not to the government, (Dunlop's U. S. Laws, p. 1403,) and the rate or price of storage in this particular case was agreed upon between the witness and the plaintiffs before the iron was taken in.

That the plaintiffs were not of the class known as quibbling customers appears from the statement of the store-keeper, that he would certainly have delivered the iron upon the presentation of the permit, without requiring the immediate payment of the storage, and the conclusion of the evidence is, that if the defendants had fulfilled their contract when the custom house permit was obtained and tendered to them, the store-keeper would have delivered the iron to them, and charged the storage to the plaintiffs.

There was in point of fact no lien at all in the case. Where it appears from the course of dealing of the warehouse-man, or by the agreement of the parties, that the goods stored will be delivered without requiring the immediate payment of the storage, the warehouse-man relying on the personal credit of t.. parties, there is no lien, because such a course of dealing is inconsistent with an implied agreement at the time of the deposit, that the property is not to be taken away unless the storage is paid. *Crawshay* v. *Homfray*, 4 B. & Ald., 50. In the case cited, a quantity of iron was stored by the importer with the warehouse-man, and afterwards sold to the

Dunham v. Pettee.

plaintiffs. A part of the iron was delivered to the plaintiffs, when, the importer having failed, the warehouse-man refused to deliver the remainder, claiming a lien upon it for the storage. By the course of dealing, the storage was usually paid by the merchant importer at the Christmas following the importation, whether the lien had been removed in the mean time or not; and upon this state of the facts, it was held that the warehouse-man had no lien, and that the plaintiff was entitled to the remainder of the iron without paying the storage. That case differs from the present only in the feature that there, by the usual course of dealing, there was a fixed time for payment, but that makes no difference in the principle, which is, that no lien exists where there is an understanding which may be implied from the course of dealing, that the property will be delivered without requiring the immediate payment of the storage. The right of lien is founded upon an implied contract (*Cowell* v. *Simpson*, 16 Ves. 275; *Livingston* v. *Blacklack*, M. & S., 542), and where it appears that the parties have contracted for a particular time of payment, or for a mode of payment inconsistent with the contract which the law would otherwise imply, no lien exists. *Chase* v. *Witmore*, 5 M. & S., 306; *Hutton* v. *Brugg*, 2 Marsh. 345; per GIBBS, C. J.

In the civil law, if credit is given, the right to a lien is gone, upon the ground that a credit is inconsistent with a lien (Dig. lib. 18, tit. 1, c. 19); and this was recognized as a principle of the common law as early as the Year Book (5 Edw. IV. 2 pl. 20; 17 Edw. IV.).

Where it appeared, therefore, that it was the established usage of the store-keeper to deliver property to houses in good standing, relying upon their personal credit for the payment of the storage, it was showing that in such case the right of lien was waived, and we have no right to imply, nor would a jury be justified in finding that the contract of the plaintiffs with the store-keeper was different from that of other houses in good standing. Such an arrangement with solvent houses might have been equally advantageous, both to the store-keeper, and to them, and it was one that he was competent to make, as he, and not the government, was entitled to the storage. Such an arrangement having been established by the course of dealing, it must be presumed that the plaintiffs con

tracted upon the same terms as others in like situation, until the contrary is shown, and such being the fact, there was no lien.

To entitle the plaintiffs to recover, they were bound to show that they were able, and offered, to deliver the property. The tender of the permit was sufficient if that was all that was necessary to enable the defendants to take possession of the goods, and if the store-keeper would have delivered the iron to them, on the presentation of the permit alone, without requiring them to pay the storage which he swore upon the trial he would have done, and which I hold he was bound to do, upon the ground that there was an implied understanding at the time of the deposit, that goods would be delivered to solvent houses without requiring the payment of storage at the time of delivery, then the plaintiffs have shown all that could reasonably be required of them, and to insist that they should do what the store-keeper in this case did not exact, to put themselves in a position to deliver, is to demand on their part the performance of an act which the facts of the case show was unnecessary. The law would indeed be subject to the reproach of insisting upon technicalities to the sacrifice of substantial justice if we were to hold that the plaintiffs must fail in their action and lose all bought upon their contract, because they did not go and pay the storage when they knew that the iron would be delivered, and that the storage would be charged to them.

The question put to the witness Dimon, whether he had authority to endorse the permit, if the money had been paid, was a proper one, and the question put to the store-keeper, whether in his previous dealings with the plaintiffs, it was his habit to deliver goods on their order without the payment of storage, was also proper for the reasons already stated.

The four grounds assigned for the motion for nonsuit, were untenable. The two first are answered by Chief Justice Ruggles already referred to. As respects the third, I have already stated that in my judgment the offer or tender was sufficient, and as respects the fourth, it is enough to say that if the plaintiffs were not in a condition to deliver the iron when they first sent their check to the defendants, it was because they were engaged in getting it through the custom-

Purdue, &c., v. The Mayor, &c.

house; they had the permit when their check was returned, and they sent it to, and tendered it at, the defendants' office at twenty-five minutes before three o'clock P. M.

The defendants had left no instructions with the clerk, and it was very evident that they were not prepared to pay, as their object was to get the permit, that they might raise, by means of it, the money by which to fulfill the contract.

In the view I have taken of this case, it is wholly immaterial whether the judge was right or not in telling the jury that as the defendants were dealers in iron, and knew that this was a bonded warehouse, they should be presumed to know that there was a charge for storage, and that if they wished to avail themselves of the objection that there was no receipt showing the payment of it, they should have called the plaintiffs attention to the omission, and refused to accept until the charge for storage was paid, and in other respects, the charge, in the view I have taken, was unobjectionable.

The judgment should be affirmed.*

HILTON, J., concurred.

---

* The judgment in this case was affirmed by the Court of Appeals.