## Case No. 2,893.

### In re CLIFFORD.

### [2 Sawy. 428.][1]

### District Court, D. California. May 8, 1873.

GOODS IN BONDED WAREHOUSE IN POSSESSION OF U. S.—DELIVERY.

Goods in a United States bonded warehouse, and on which the duties have not been paid, are in the possession of the United States, and an order by their owner and vendor for their delivery by the warehouseman to the vendee, even though presented to and accepted by the warehouseman, will not be good as a constructive or symbolical delivery, nor constitute a receipt or acceptance of the goods sufficient to satisfy the statute of frauds.

[Cited in Northwestern Mut. Life Ins. Co. v. Elliott, 5 Fed. 228.]

[In the matter of George Clifford, a bankrupt.]

McAllister & Bergin, for Tong Wo & Co.
S. A. Jones, assignee, in pro. per.
D. T. Sullivan, for bankrupt.

HOFFMAN, District Judge. On the nineteenth of December, 1872, the bankrupt purchased of Tong Wo & Co., Chinese merchants of this city, 4,189 mats of rice for the sum of $10,472.50. The rice was at the time of sale in a bonded warehouse, and on the succeeding day the vendors gave to the bankrupt delivery orders on the warehouseman, which were duly presented, and the corresponding entries made in the warehouseman's book. The purchase money was to be

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

paid, one half on the twenty-eighth of February and one half on the thirteenth of March, 1873. The goods have remained in the warehouse (with the exception of a small portion delivered by mistake) until the present time, the duties thereon (with the exception just mentioned) being unpaid.

On the ninth of January, 1873, a petition in bankruptcy was filed by Clifford, and on the tenth of January he was duly adjudged a bankrupt. A petition was subsequently filed by the vendors of the goods, praying that their title thereto should be adjudged valid, and that all claims of the assignee should be declared invalid and void.. At the time of the sale a memorandum was made, in which the goods sold, the price and the terms of payment were set forth. At the head of this paper the name of the vendor is printed, but the memorandum is not subscribed, nor is the name of the vendor anywhere written in the document. It is therefore clearly insufficient under the statute of frauds of this state, which requires the note or memorandum of the contract for the sale of goods, etc., to be subscribed by the party to be charged therewith. Davis v. Shields, 26 Wend. 350; James v. Patten, 2 Seld. [6 N. Y.] 13; Stevens v. Stewart, 3 Cal. 140.

It is contended, however, that the contract is valid under the statute, inasmuch as the buyer has "accepted and received the goods;" and the question presented is—Did the receipt by the buyer of the delivery orders, and their presentation by him to the warehouseman, constitute a receipt or acceptance of the goods sufficient to satisfy the statute? It is not questioned that in general, where goods at the time of the sale are in the possession of a third person as bailee of the vendor, the order of the latter to the bailee to deliver the goods to the vendee or to hold them subject to his order, with an assent on the part of the bailee so to hold them, will be sufficient to effect a change of possession, and to constitute a valid receipt and acceptance under the statute of frauds. The possession of the bailee, the agent of the vendor, is the possession of the latter, and where, by his direction, the bailee consents to become the bailee of the vendee, his possession is thereafter that of the vendee. But to effect a change of possession sufficient to constitute an actual receipt by the vendee, the bailee must accept the order, or recognize it, or consent to act in accordance with it; and until he has so agreed, he remains agent and bailee of the vendor. Benj. Sales, p. 128 et seq.

The evidence in this case does not clearly disclose what acts were done by the warehouseman when the delivery orders were presented. I will assume, however, that he accepted and recognized them, so far as he lawfully might, and that what was done by him would have been sufficient to effect a change of possession if his relation to the parties and the goods had been that of an ordinary bailee or agent of the vendor.

But such was not the case. The goods were in his custody as a custom-house officer in charge of a United States bonded warehouse. He did not hold the goods subject to the vendor's order, or to be delivered to him on demand, or to any person by his direction. The goods were in the possession of the government, which held them subject to the lien for duties, and they could be withdrawn only on payment of duties and by virtue of a permit obtained from the proper officers of the customs.

By the act of March 28, 1854, § 1 [10 Stat. 270], goods subject to duty may be stored in a private warehouse, to be designated on the warehouse entry at the time they are entered, "provided that such warehouse is used exclusively for the purpose of storing warehoused goods, and shall have been previously approved by the secretary of the treasury, and have been placed in charge of a proper officer of the customs, who, together with the owner or proprietor of the warehouse, shall have the joint custody of all the goods stored in such warehouse; and all the labor on the goods so stored must be performed by the owner or proprietor of the warehouse, under the supervision of the officer of the customs in charge of the same, and at the expense of the aforesaid owner and proprietor."

By the third section, the owner, occupant or lessee of the warehouse is required to give bonds to the United States, to be approved by the secretary of the treasury. By the third section of the act of August 6, 1846 [9 Stat. 54], warehouse goods fraudulently concealed or withdrawn from a public or private warehouse are declared to be forfeited, and the parties so concealing or withdrawing such goods are made liable to the penalties for smuggling; "and if any importer or proprietor of any warehoused goods, or any person in his employ, shall, by any contrivance, fraudulently open the warehouse, or shall gain access to the goods except in the presence of the proper officer of the customs acting in the execution of his duty, such importer or proprietor shall forfeit and pay for every such offense one thousand dollars."

In the revised customs regulations, framed by the treasury department in pursuance of law, the duties of the officer in charge of a warehouse are minutely prescribed. He is required to keep a correct account of receipts and deliveries of goods, with their marks, description of packages, date of delivery, date of receipt, of permit, etc., and daily returns to the collector and naval officer of the goods received and permitted for delivery, are required. Article 164. By article 165, "no goods are to be delivered unless on a permit signed by the collector and naval officer, and indorsed by the clerk in charge of the general storage books at the custom house, to show that he has entered it on his books, and the further indorsement of the cashier, as evi-

dence that the custom house charges have been paid." By article 166 it is provided that "in the collector's office accounts are to be kept with the several public stores and bonded warehouses of all goods received into and delivered therefrom, to be a check on the account of the same. The account will be debited with the goods received, as shown by the daily return of the officer in charge, and be credited with the several permits as they issue from the collector's office. These permits will be treated as deliverances in this account, and the goods permitted marked off as delivered. When this is done, the clerk will indorse the permit and state above his indorsement the charges to be collected by the cashier. When inventories are taken at the several warehouses, their correctness is to be tested by these books and not the books of the warehouse; and when certificates are required, either for claims for damage or for any other purpose, that the property is in store, the verification must come from these books, and not the warehouse books, as any property remaining in store after presentation of permits, will not for such purpose be considered in the custody of the collector."

The importer is by the custom house regulations regarded not only as the person primarily and absolutely liable for the duties, but as alone authorized to obtain a permit for the withdrawal of the goods. He may, however, by making an assignment on the original warehouse entry, substitute in his stead his assignee or vendee. A note of this assignment is taken in the warehouse books at the custom house, and the permit may thereafter be obtained by the assignee.

From the foregoing laws and regulations, it is plain that goods subject to duty, stored in a warehouse, are de jure and de facto in the possession of the government, and that possession cannot be divested by an attachment at the suit of the creditor of the importer (Harris v. Dennie, 3 Pet. [28 U. S.] 303), nor by the officer in charge, nor by the importer, except in the manner provided for by law. The officer is in no sense the bailee of the importer, and no attornment by him to a third person by order of the importer can have any effect to change the possession of the goods.

Admitting, then, that in ordinary cases an indorsed warehouse receipt, or a delivery order on a warehouseman, accepted by the latter, will operate to transfer the possession, or be good as a constructive or symbolical delivery of the goods, the delivery order in the case at bar can have no such effect; for the importer had no right to order the delivery, and the warehouseman had no right to make it. To hold otherwise would involve the absurdity of supposing that there may be a good constructive delivery by means of certain documents where an actual delivery is legally impossible. See Zachrisson v. Poppe, 3 Bosw. 180; 3 E. D. Smith, 538, 4 E. D. Smith, 504, 505; 1 Daly, 112.

I am, therefore, of opinion that in this case there has been no receipt or acceptance of the goods sufficient to satisfy the statute of frauds, and that, therefore, no valid contract of sale has been made by the parties. It may be observed, in addition, that in holding the delivery orders in this case ineffectual, as a constructive delivery of the goods, it is by no means certain that we are defeating the intention of the vendor. He may not unreasonably be supposed to have been aware that the buyer could not obtain actual possession of the goods until a permit should be obtained for them, and this could only be procured after he (the vendor) had executed an assignment of them on the original entry as required by the custom house regulations. This, if the credit had expired, or the buyer became insolvent, he might decline to do, and it is possible that in making his contract he intended to reserve to himself the control over the goods which their situation and his relation to them gave him, and to retain in this form a lien for the purchase money.

The delivery order recites that the duties had been paid, which was untrue. The vendor must have been aware that it was wholly ineffectual and inoperative to enable the vendee to obtain possession of the goods, and it was intended, no doubt, merely to furnish the vendee with evidence of his right to take possession to be available and operative only after the vendor had paid the duties and obtained and presented a permit.

It is strenuously urged by the counsel for the assignee that in this case there was an actual delivery of part of the goods, sufficient to take the case out of the statute. It appears that the officer in charge of the warehouse did deliver on the bankrupt's order four hundred mats, erroneously supposing that the duties had been paid, as the delivery order recites, and that a permit had been obtained. On discovering his mistake, he applied to Tong Wo & Co., representing that he would be obliged to pay the duties out of his own pocket. Tong Wo & Co. thereupon consented to pay the duties.

But it is clear that this delivery under a mistake and contrary to law cannot constitute a receipt or acceptance of a part of the goods under the statute. The officer acted in clear violation of his duty, misled very probably by the recital in the order that the duties had been paid. If the order was intentionally drawn in that form, or was knowingly presented by the bankrupt, it was a fraud upon the United States, and was a criminal offense within the third section of the act of 1846. The most lenient construction of the transaction is, that it was a mistake on the part of the bankrupt, but whether an innocent mistake or an intentional fraud, neither he nor his assignee can now be heard to affirm that the obtaining of a portion of the goods under such circumstances constituted a receipt and acceptance within the meaning of the statute.